IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Francis Dean McGraw, | ) | Civil Action No. 8:14-cv-03208-RMG-JDA |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| Carolyn W. Colvin, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to Local Civil Rule 73.02(B)(2)(a), D.S.C., and 28 U.S.C. § 636(b)(1)(B).[1]  Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claim for disability insurance benefits ("DIB").  For the reasons set forth below, it is recommended that the decision of the Commissioner be reversed and remanded for administrative action consistent with this recommendation, pursuant to sentence four of 42 U.S.C. § 405(g).

**PROCEDURAL HISTORY**

On May 18, 2010, Plaintiff filed an application for DIB alleging disability beginning August 28, 2009.  [R. 215–18.][2]  The claim was denied initially and on reconsideration by the Social Security Administration ("the Administration"). [R. 199–202; 204–06.]  Plaintiff

---

[1]A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

[2]The record indicates Plaintiff filed a prior application for disability on June 3, 2009, which was denied [R. 189–90].

requested a hearing before an administrative law judge ("ALJ"), and on December 6, 2012, ALJ Harold Chambers conducted a hearing on Plaintiff's claim.  [R. 53–90.]

The ALJ issued a decision on February 6, 2013, finding Plaintiff not disabled.  [R. 35–46.]  At Step 1,[3] the ALJ found Plaintiff met the insured status requirements of the Social Security Act ("the Act") through September 30, 2014, and had not engaged in substantial gainful activity since August 28, 2009, the alleged onset date.  [R. 37, Findings 1 & 2.]  At Step 2, the ALJ found Plaintiff had the following severe impairments: rheumatoid arthritis; multi-joint degenerative joint disease; right torn biceps muscle (on and after March 1, 2011); hearing loss; acid reflux; and depression with anxiety.  [R. 37, Finding 3.]  The ALJ also noted that Plaintiff "has been diagnosed with the above orthopedic, immune system, audiological, digestive, and psychological impairments that impose significant work related limitations."  [*Id.*]  At Step 3, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments in Listings 1.00, 2.00, 5.00, 12.00 and 14.00 in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 37, Finding 4.]  The ALJ, however, only explained his consideration of Listings 12.04, 12.06, and 12.09.  [R. 37–39.]

Before addressing Step 4, Plaintiff's ability to perform his past relevant work, the ALJ found Plaintiff retained the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except more particularly as follows: He can lift up to 15 pounds occasionally and lift or carry up to 10 pounds frequently. The claimant can

---

[3]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

sit up to four-to-six hours in an eight-hour workday.  The claimant can stand or walk up to four-to-six hours in an eight-hour workday. He can frequently push or pull bilaterally with his upper extremities and has no limitations in reaching in all directions bilaterally. The claimant can operate foot controls bilaterally one-half of the work period (four hours out of an eight-hour workday).  He can never climb ladders, ropes, or scaffolds.  The claimant can occasionally climb ramps and stairs (no more than four to six steps at anyone time with the assistance of a single handrail).  He can frequently balance, and he is limited to jobs which can be performed while using a hand held assistive device that is only required when walking away from the workstation.  If needed, he can use the work station to assist with balance when standing or walking in and around the work station. The claimant can occasionally stoop, kneel, or crawl but cannot crouch. He must avoid even moderate exposure to excessive noise, and concentrated exposure to excessive vibration. He must avoid even moderate exposure to environmental irritants (e.g., fumes, dusts, gases, and odors), poorly ventilated areas, and exposure to chemicals. The claimant must avoid exposure to hazards (e.g., use of moving machinery and exposure to unprotected heights). He is limited to occupations that do not involve the handling, sale, or preparation of alcoholic beverages or access to narcotic drugs.  The work he can do is limited to simple, routine, and repetitive tasks with no fast-paced production rate work or fast-paced work in general. He can only perform jobs that require no constant communication and no frequent telephone communication.

On and after March 1, 2011, the claimant's residual functional capacity remains the same as described above, with additional functional limitations due to claimant's right biceps tear. As of that date, he can occasionally push and pull with the dominant right upper extremity and frequently push and pull with his left upper extremity. Overhead reaching with the right upper extremity is limited to occasional after March 1,2011, with no limitation as regards the left upper extremity.

[R. 39.]

At Step 4, the ALJ noted Plaintiff was unable to perform any of his past relevant work as a welder. [R. 44, Finding 6.]  Considering Plaintiff's age, education, work

3

experience, RFC, and the testimony of a vocational expert, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. [R. 45, Finding 10.] On this basis, the ALJ found Plaintiff had not been under a disability as defined by the Act from August 28, 2009, through the date of the decision. [R. 45, Finding 11.]

Plaintiff requested Appeals Council review of the ALJ's decision, but the Council declined. [R. 1–7. ] Plaintiff filed this action for judicial review on August 8, 2014. [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ's decision is not supported by substantial evidence and that remand is necessary because the ALJ improperly evaluated the medical opinion evidence of record by giving little weight to the opinions of Plaintiff's treating physicians and/or failing to weigh the opinions of Plaintiff's treating physicians. [Doc. 12 at 23–34.] Plaintiff further contends the Appeals Council improperly failed to evaluate new evidence which conflicts with the ALJ's findings. [*Id*. at 34–38.]

The Commissioner, on the other hand, contends the ALJ's decision is supported by substantial evidence, and the ALJ properly evaluated the opinions of Plaintiff's treating physicians. [Doc. 13 at 13–18.] The Commissioner also contends that the post-decision submission to the Appeals Council was not new and material; thus, it cannot serve as a basis for remand. [*Id.* at 18–21.]

4

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963))("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision). Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment

for that of the Commissioner so long as the decision is supported by substantial evidence. *See Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).   Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek  v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)).  Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose."  *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g).  *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision).  To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual

6

functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled).   Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Comm'r*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence).   On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand.").  After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction.  *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).   A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the

7

determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[4]  With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings.  *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

---

[4]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence.  *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect.  *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

8

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims).  The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.  20 C.F.R. § 404.1520.  Through the fourth step, the burden of production and proof is on the claimant.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).  The claimant must prove disability on or before the last day of her insured status to receive disability benefits.  *Everett v. Sec'y of Health, Educ. &*

9

*Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Grant*, 699 F.2d at 191. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 404.1572(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 404.1572(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* §§ 404.1574–.1575.

### B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* § 404.1521. When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the

10

[Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. § 423(d)(2)(B).

**C.     *Meets or Equals an Impairment Listed in the Listings of Impairments***

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 404.1509, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(d).

**D.     *Past Relevant Work***

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995). At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[5] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work. 20 C.F.R. § 404.1560(b).

---

[5]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a).

11

### E.     *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992); 20 C.F.R. § 404.1520(f)–(g).   To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").   Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[6]   20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *see also Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations).   When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931. In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work.   20 C.F.R. § 404.1569a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of

---

[6]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs.  20 C.F.R. § 404.1569a(a).  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing.  § 404.1569a(c)(1).

exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy."). The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker*, 889 F.2d at 50. For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ is required to inquire fully into each relevant issue. *Snyder*, 307 F.2d at 520. The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

## III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(c)(2); *see Mastro v. Apfel*, 270

F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. § 404.1527©). Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 404.1527(c)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986). Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a

14

claimant is disabled.  20 C.F.R. § 404.1527(d).  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 404.1517; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).  The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability.  20 C.F.R. § 404.1517.  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  *Id.*

## V.    Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree,

15

alleged by the claimant.'" *Id.* (quoting *Craig*, 76 F.3d at 594). Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
>
> ...

16

**FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. § 404.1529(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.   Credibility

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such

17

determinations should not be sustained if they are based on improper criteria. *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor.  But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**Medical Opinion Evidence**

Plaintiff contends this case is subject to remand because the ALJ improperly gave little weight to the opinions of Dr. Kevin P. Tracy ("Dr. Tracy") and  Dr. Richard B. Bannon ("Dr. Bannon") and failed to weigh the opinion of Dr. Michael P. Hoenig ("Dr. Hoenig"). [Doc. 12 at 23.]

The Commissioner argues the ALJ properly gave some weight to sections of Drs. Tracy, Bannon and Hoenig's[7] opinions that were supported by substantial evidence and less weight to the opinions that were inconsistent with substantial evidence of record. [Doc. 13 at 14.]

### *Pertinent Medical History*

Plaintiff alleges disability due to rheumatoid arthritis, depression, anxiety, nerves, hearing impairment, and knee injury.  [R. 245.]  Treatment notes from Dr. Bannon, a family

---

[7]While the Commissioner says in one statement that the ALJ weighed Dr. Hoenig's opinion, the Commissioner admits in another statement that "[a]lthough Dr. Hoenig's opinion was not weighed, that oversight was harmless. In fact, Dr. Hoenig's opinion would have been afforded less weight because, similar to the opinions of Drs. Bannon and Tracy discussed above, a limitation to sedentary work is inconsistent with substantial evidence of record...". [Doc. 13 at 18.]

18

medicine doctor, dated February 5, 2008, indicated that Plaintiff had a lot of arthritis problems. [R. 339.] On April 10, 2008, and on August 7, 2008, Plaintiff saw Dr. Tracy, a rheumatologist, on follow-up visits noting a pain level of 7, good blood pressure, but indicating that his troubled areas were his hips, knee and shoulder. [R. 342–43.] On December 2, 2008, Plaintiff saw Dr. Tracy on a another four-month follow-up visit. [R. 341.] Dr. Tracy noted that Plaintiff's weight was up; his hips, knees and shoulders still had pain, worse with the cold damp weather; he experienced crepitance in the knees, but there was no locking or worsening that would require intervention. [R. 341.] Notes from Dr. Bannon dated January 9, 2009, indicated Plaintiff had not had any trouble on his medicine, his high blood pressure was controlled, and his arthritis was stable. [R. 338.] At the time, Plaintiff was working as a welder at the Donaldson Center and had work lined up for quite some time. [*Id*.]

On April 2, 2009, Plaintiff saw Dr. Tracy for a four-month follow-up visit. [R. 340.] Plaintiff indicated he was pursuing disability and that his workload was quite significant. Dr. Tracy did not appreciate any new joint swelling, warmth or redness, digital infarct or Raynauds; and there was no proximal or distal muscle weakness. [*Id*.] Dr. Tracy indicated he would follow up in 6 months. [*Id*.]

On April 10, 2009, Plaintiff saw Dr. Bannon complaining of worsening arthritis and back pain. [R. 337.] Dr. Bannon noted that Plaintiff showed no signs of acute distress, but that his joints were a little tender to palpation although there was no gross swelling or erythema. [*Id*.] Treatment notes indicated Plaintiff's blood pressure was doing alright on medicine, and he had a fair amount of anxiety. [*Id*.]

On August 20, 2009, Dr. Bannon completed a questionnaire regarding Plaintiff's mental condition indicating that Plaintiff had been diagnosed with anxiety and was being treated with Xanax.  [R. 333.]  Dr. Bannon also noted that the medication helped Plaintiff's condition and psychiatric care had not been recommended.  [*Id.*]  Dr. Bannon indicated that Plaintiff was oriented as to time, person, place and situation; had intact thought process and appropriate thought content; had a worried/anxious mood/affect; adequate attention/concentration; and adequate memory.  [*Id.*]  Dr. Bannon also opined that Plaintiff had slight work-related limitations in function due to his mental condition, and he could manage his own funds.  [*Id.*]

On October 5, 2009, Dr. Husam Mourtada ("Dr. Mourtada") performed an evaluation on Plaintiff at the request of the disability examiner. [R. 395.]  Dr. Mourtada indicated that Plaintiff complained of decreased hearing in both ears, but noted that he did not notice any major or significant hearing loss during the exam although further evaluation with hearing tests would be appropriate. [*Id.*]  Dr. Mourtada also noted that Plaintiff complained of depression/anxiety, although he felt better with medication, especially Xanax, and poor sleep.  [*Id.*] Plaintiff also complained of hypertension, and Dr. Mourtada noted that his hypertension was well controlled on medication with no major complications.  [*Id.*] Lastly, Dr. Mourtada noted that Plaintiff complained of rheumatoid arthritis with pain over all of his joints in the limbs and over the whole spine ranging between 6 to 10 out of 10, sharp and dull pain which was worse with activities including stooping, bending or doing anything. [*Id.*]

On physical exam, Dr. Mourtada noted Plaintiff was alert and oriented x3 and not in acute distress. [R. 396.] On neurological exam, Plaintiff showed motor strength of 5-/5 for major muscles of both upper and lower extremities, which was somewhat limited with the pain in the joints. [*Id.*] No focal or sensory deficits were found, but deep tendon reflexes were noted to be diminished, but equal in both biceps, triceps, brachioradialis, knees and ankles. [*Id.*] On musculoskeletal exam, Plaintiff's gait was antalgic due to increasing pain over the right knee, and he used a cane for ambulation. [*Id.*] Dr. Mourtada noted that Plaintiff exhibited tenderness with palpation of all the joints in upper and lower extremities and whole spine, but there was no significant edema or erythema except over the right knee which had some mild erythema and a small wound. [*Id.*]

Dr. Mourtada also noted that the range of motion of Plaintiff's cervical spine was normal except lateral flexion 30 degrees and rotation 70 degrees. [R. 397.] The range of motion in Plaintiff's lumbar spine was normal, as was the range of motion in both shoulders, elbows, writs, and left knee. [*Id.*] Plaintiff had some difficulty doing fine motor manipulation with his hands but he was able to button and unbutton his shirt. [*Id.*] Plaintiff also exhibited some shaking and mild tenderness on palpation of the hands bilaterally. [*Id.*] Dr. Mourtada noted that Plaintiff was not able to do tandem walk, heel walk, toe walk, or squatting. [*Id.*] No muscle atrophy, however, was noted. [*Id.*] Dr. Mourtada assessed Plaintiff with hypertension, decreased hearing that needed to be better evaluated; depression; anxiety; rheumatoid arthritis affecting all joints and spine; and right knee pain increased with recent fall. [*Id.*]

On November 24, 2009, Plaintiff presented for an X-ray of his right hand, at the request of Dr. Charles Jones ("Dr. Jones"), which showed subtle narrowing of the distal interphalangeal joint of the fifth digit with associated subtle marginal osteophytic lipping consistent with early osteoarthritis. [R. 407.] Plaintiff was diagnosed with mild osteoarthritis of the distal inerphalangeal joint of the fifth digit; no other abnormalities were recognized. [*Id.*] Dr. Jones also ordered X-rays of Plaintiff's cervical spine, which showed questionable disc space narrowing at the C4–C5-6 and C6–7 levels. [R. 408.] Plaintiff was diagnosed with presumed early multi-level degenerative disc disease; anterior osteophytic lipping and/or calcification of the anterior longitudinal ligament at the C4-5 and C5-6 levels; and multilevel bilateral facet joint hypertrophy. [*Id.*] X-rays of the lumbar spine ordered by Dr. Jones showed posterior disc space narrowing at the L4-L5 and L5-S1 levels with subtle anterior osteophytic lipping noted from L2-L3 through L4-L5 levels. [R. 409.] Plaintiff was diagnosed with mild degenerative disc disease at the L4-L5 and possibly at L5-S1 levels; very subtle retrolisthesis of the superajacent vertebrae at the L4-L5 level with subsequent subtle bony spinal encroachment (degenerative in etiology); and bilateral facet arthropathy at L5-S1 level. [*Id.*]

On February 2, 2010, Plaintiff saw Dr. Hoenig, an orthopaedic doctor with Orthopaedic Associates, PA, on follow-up regarding his right knee complaints. [ R. 429.] Plaintiff complained that his knee still wanted to lock up and buckle, and that he had pain mostly about the medial side of the knee. [*Id*.] On general exam, Dr. Hoenig noted Plaintiff appeared healthy and was in no acute distress, oriented x3, and had normal gait. [R. 430.] Dr. Hoenig decided to proceed with surgery consisting of a right knee arthroscopy with partial nedial meniscectomy and chondroplasty. [*Id*.] Dr. Hoenig noted that he did not see

22

any reason why Plaintiff could not return to full duty after the surgery and that he expected maximum medical improvement ("MMI") within three months after the surgery. [R. 431.]

On April 6, 2010, Plaintiff saw Dr. Hoenig and reported improvement after undergoing a knee scope with chondroplasty of the patella and partial medial meniscectomy about six weeks prior, but he still had significant pain diffusely about the knee that occasionally radiated to the thigh and down his leg. [R. 422.] On general exam, Dr. Hoenig noted Plaintiff appeared healthy with no acute distress, oriented x3 and normal gait. [R. 423.] Dr. Hoenig noted no effusion of the knee and well healed portal sites, although Plaintiff was diffusely tender to palpation about the knee as well as about the thigh and all the way down the leg, including his ankle. [R. 423.] Dr. Hoenig recommended Plaintiff continue with physical therapy and limited him to sedentary duty but wanted to work to get him back to full duty. [*Id*.]

On May 25, 2010, Dr. Hoenig completed a Physician Statement on a Worker's Compensation Commissioner's form, indicating he had been seeing Plaintiff from October 16, 2009, through May 18, 2010, and that Plaintiff had undergone a right knee partial medial menuscetomy with chondroplasty. [R. 418.] Dr. Hoenig concluded Plaintiff had sustained a 3% medical impairment to the right knee and was able to return to sedentary duty. [*Id.*] Also, Dr. Hoenig and his co-worker indicated on May 25, 2010, that Plaintiff had reached MMI, everything had been done that could have been done, Plaintiff was still having fairly severe pain in right knee and pain in left knee, and he would have permanent restrictions of sedentary work only. [R. 420–21.]

On June 18, 2010, Dr. Bannon completed a second form opinion regarding the limitations on Plaintiff's ability to work which related to his mental condition. [R. 512.] Dr.

23

Bannon indicated Plaintiff had been diagnosed with anxiety and was taking Xanax. [*Id.*]

Dr. Bannon also noted that the medication was helping Plaintiff's condition and that

psychiatric care had not been recommended.  [*Id.*] Dr. Bannon indicated Plaintiff was

oriented as to time, place, person and situation; his thought process was intact and content

appropriate; his mood/affect was worried/anxious; his attention/concentration was

adequate and his memory was adequate.  [*Id.*]  Dr. Bannon noted that Plaintiff's work-

related limitation in function to due his mental condition was obvious but that he was

capable of managing his own funds.  [*Id.*]

On May 24, 2011, Dr. Bannon completed a questionnaire regarding Plaintiff's ability

to engage in work on an 8 hour per day, 5 day per week basis.  [R. 570.]  Dr. Bannon

opined as follows:

> \*      Plaintiff was unable to engage in anything more than sedentary work,
> sedentary work being defined as lifting no more than 10 pounds at a time
> and occasionally carrying articles like docket files, ledgers, and small tools;
> involves sitting, a certain amount of walking and standing occasionally.
>
> \*      If Plaintiff attempted to work on an 8 hour day, 5 day per week basis, it would
> be best to limit activities such as reaching with the left hand and arm to an
> occasional basis.
>
> \*      If Plaintiff attempted to work on an 8 hour day, 5 day per week basis, he
> would probably have to miss more than 3 days of work per month.
>
> \*      If Plaintiff attempted to work on an 8 hour day, 5 day per week basis, it was
> most probable that he would have problems with attention to and
> concentration sufficient to frequently interrupt tasks during the work portion
> of the day.

[*Id.*]  Dr. Bannon also noted that Plaintiff's underlying diagnoses were rheumatoid arthritis

and degenerative disc disease ("DDD") based on a rheumatologist consult and MRI of the

spine.  [*Id.*]  Dr. Bannon's treatment notes from May 24, 2011, indicated Plaintiff was on

24

Xanax for his nerves, was not having trouble with medications for his blood pressure which was controlled, and had a stable heart. [R. 572.]  Dr. Bannon noted that Plaintiff had a lot of trouble with back and knee pain and had reached a point that he could not stoop, squat or stand for any length of time.  [*Id.*]  Dr. Bannon also noted that, after any activity for 15 minutes, Plaintiff had to rest for a hour.  [*Id.*]

Further, Dr. Bannon drafted a letter to Plaintiff's counsel dated May 25, 2011, reiterating the opinions provided in his questionnaire. [R. 612.]  Dr. Bannon also noted that there are several problems that contribute to Plaintiff's disability including significant anxiety for which he takes medication; a history of seizure activity which has been controlled for some time; and high blood pressure which is well controlled with medication. [*Id.*]  Dr. Bannon ultimately concluded that it was his opinion that Plaintiff "is disabled and is not likely to improve to the point where he can resume employment."  [*Id.*]

On July 7, 2011, Dr. Tracy wrote a letter explaining that he had treated Plaintiff from approximately 2006–2010 due to complaints of pain in his feet, ankles, knees, wrists, shoulders and cervical spine. [R. 613.] Dr. Tracy explained that Plaintiff had some arthritis in most of his major joints and that an MRI in August 2007 confirmed he had arthritis in his cervical spine, explaining the pain he described in his neck and into his arms.  [*Id.*]  X-rays taken in 2006 also showed degenerative changes in his knees.  [*Id.*]  Dr. Tracy opined that, based on his knee arthritis, Plaintiff would be limited to no more than sedentary work with sedentary work defined as being able to stand or walk in combination no more than 2 hours total out of an 8 hour work day.  [*Id.*]  Dr. Tracy further opined that, due to pain in his cervical spine and his arms, Plaintiff would be limited in his ability to lift any more than 10

25

pounds occasionally and no more than light files or papers frequently.  [*Id.*] Dr. Tracy explained that Plaintiff had an injury to the long muscle in the biceps of his arm that will significantly restrict the use of that arm, and he does not have the stamina to use that arm more than 1/3 total out of an 8 hour work day.  [*Id.*]

On August 26, 2011, Plaintiff saw Dr. Tracy on follow-up complaining of leg pain in both the right hip and right buttock areas which appeared to be "in like a lumbar 4 distribution." [R. 622.]  Plaintiff explained he was walking more on the left side to decrease pressure on the right and was using a stick on the left side to assist.  [*Id.*]  Dr. Tracy noted that Plaintiff had crepitance in his knees, worse on the right, shoulder arthritis, a lumbar 4 disc issue, and fibromyalgia without proximal or distal muscle weakness.  [*Id.*] Dr. Tracy ultimately wrote Plaintiff a note indicating that he had osteoarthritis and used a cane for walking and had been given a handicap placard. [R.  623.]

### ALJ's Weighing of Medical Evidence

Upon examining and summarizing the medical evidence of record [R. 40–42], the ALJ explained his consideration of the opinions of Drs. Bannon and Tracy as follows:

> I have considered the treating and examining source evidence and I find it establishes the claimant's impairments as severe but not disabling. I give Dr. Bannon's opinion regarding the claimant's mental limitations less weight as he is not a psychiatrist and his own treatment notes do not support more than mild to moderate functional limitations. I give Dr. Bannon's and Dr. Tracy's opinions regarding the claimant's physical limitations great weight with regard to the claimant's orthopedic impairments and limitations. However, I give Dr. Tracy's opinion (i.e., that the claimant is capable of no more than sedentary work) less weight as the evidence as a whole supports lifting and carrying up to fifteen pounds. I give Dr. Ruffing's opinions of the claimant's ability to focus and

concentrate to perform simple routine tasks great evidentiary weight as his own evaluation supports that opinion.

My reasons for giving the opinions of Drs. Bannon and Tracy less than controlling weight are as follows. First, testimony established that these opinions were simply based on both doctors simply asking the claimant what he thought he was capable of doing. Having received answers to this question, both doctors simply parroted the claimant's subjective expression of his limitations. Neither doctor performed any sort of functional capacity evaluation to objectively determine what the claimant was capable of doing. Neither doctor ordered any physical or rehabilitative therapy with functional testing to provide any objective measure of claimant's physical capabilities.

In addition, Dr. Bannon's opinion was expressed on a form provided by claimant's attorney. This form did not provide the doctor with any alternatives, did not fully define Social Security's definitions of terms used in the form, and essentially lead the doctor to answers which would result in a conclusion of disability. I also note that Dr. Bannon expressed opinions as to claimant's limitations due to both his physical and mental limitations (Exs. 11F, 22F, 24F). However, Dr. Bannon has no particular expertise in mental health issues.

Thus, for all of these reasons, I gave the opinions of Drs. Bannon and Tracy only such weight as outlined above. The medical evidence which I discussed earlier is consistent with the limitations as I assessed them and does not support the greater limitations parroted by both doctors.

[R. 42.]

Rather than discuss Dr. Hoenig's opinion expressly, the ALJ noted that Plaintiff "fell and tore the medial meniscus of his right knee, which was surgically repaired. He then developed a staph infection that was treated and eventually resolved with no further complications (Exhibit 6F)." [R. 40.]

### *Discussion*

Plaintiff argues, in part, that this case is subject to remand because the ALJ did not discuss Dr. Hoenig's opinions and indicate what weight he assigned to them. He further contends the ALJ ignored Dr. Hoenig's opinion that Plaintiff is "able to return to work with the following restrictions: sedentary duty." The Court agrees.

In considering medical source opinions, such as treating physician opinions, the ALJ is obligated to evaluate and weigh medical opinions "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). Courts typically "accord 'greater weight to the testimony of a treating physician' because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." *Id.* (*quoting Mastro*, 270 F.3d at 178). While the ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, *Craig*, 76 F.3d at 590, the ALJ must still weigh the medical opinion based on the factors listed in 20 C.F.R. § 404.1527(c).

The opinion of a treating physician is given controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). Additionally, Social Security Ruling ("SSR") 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion:

> [A] finding that a treating source medical opinion is not well
> supported by medically acceptable clinical and laboratory
> diagnostic techniques or is inconsistent with the other
> substantial evidence in the case record means only that the
> opinion is not entitled to "controlling weight," not that the
> opinion should be rejected. Treating source medical opinions
> are still entitled to deference and must be weighed using all of
> the factors provided in 20 C.F.R. 404.1527 and 416.927. In
> many cases, a treating source's opinion will be entitled to the
> greatest weight and should be adopted, even if it does not
> meet the test for controlling weight.

1996 WL 374188, at *4 (July 2, 1996).  However, not every opinion offered by a treating

source is entitled to deference:

> Medical sources often offer opinions about whether an
> individual who has applied for title II or title XVI disability
> benefits is "disabled" or "unable to work," or make similar
> statements of opinions.  In addition, they sometimes offer
> opinions in other work-related terms; for example, about an
> individual's ability to do past relevant work or any other type of
> work.  Because these are administrative findings that may
> determine whether an individual is disabled, they are reserved
> to the Commissioner. Such opinions on these issues must not
> be disregarded.  However, even when offered by a treating
> source, they can never be entitled to controlling weight or given
> special significance.

SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); *see also* 20 C.F.R. §§ 404.1527(e),

416.927(e)(stating an ALJ does not have to "give any special significance to the source of

an opinion on issues reserved to the Commissioner," such as an opinion that the claimant

is disabled, the claimant's impairment or impairments meets or equals a listing, or the

claimant has a certain residual functional capacity).

Here, Dr. Hoenig performed surgery on Plaintiff's right knee on February 24, 2010.

[R. 427–28.] Dr. Hoenig opined on or about March 10, 2010, that Plaintiff had a 3%

impairment to his knee after surgery and was limited to sedentary work. [R. 418; *see also*

29

R. 425 ("Work-wise, he will be sedentary duty only.")] Also, Dr. Hoenig and his co-worker indicated on May 25, 2010, that Plaintiff had reached MMI, everything had been done that could have been done, Plaintiff was still having fairly severe pain in right knee and pain in left knee, and he would have permanent restrictions of sedentary work only. [R. 420–21.]

While the ALJ mentioned that "the claimant fell and tore the medial meniscus of his right knee, which was surgically repaired....[and that] [h]e then developed a staph infection that was treated and eventually resolved with no further complications" [R. 40], the ALJ failed to explain his consideration of Dr. Hoenig and co-worker's opinion that Plaintiff would have permanent restrictions of sedentary work only, had reached MMI, and was still having fairly severe knee pain.  The ALJ also did not discuss, for example, Dr. Hoenig's medical specialization or Dr. Hoenig's treatment history of Plaintiff from October 16, 2009, through May 18, 2010.  [R. 418–28.] The ALJ cited to Exhibit 6F in support of his statement that Plaintiff's knee problems had resolved; however, Exhibit 6F contains results from Plaintiff's right hand X-ray, cervical spine X-ray, and lumbar spine X-ray. [R. 407–09.]

In any instance, an ALJ's failure to explain the weight given to a treating physician opinion is ground for remand because, without sufficient explanation, the reviewing court cannot determine whether substantial evidence supports the ALJ's decision. *See Koonce v. Apfel*, No. 98-1144, 1999 WL 7864, at *2 (4th Cir. Jan. 11, 1999) (stating an ALJ's determination as to the weight assigned to a medical opinion generally will not be disturbed unless the ALJ "has not given good reason for the weight afforded to a particular opinion" or "dredged up 'specious inconsistencies' "); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) (reversing and remanding due to the ALJ's failure to explain why he disregarded the treating physicians' opinions).  Of course, while the ALJ was not required to give a

doctor's opinion of whether Plaintiff could perform any work or only perform sedentary work special significance because that is a finding reserved to the Commissioner, the ALJ was required to explain his consideration of and assign weight to Dr. Hoenig's medical opinion including that after surgery Plaintiff had reached MMI, continued to have knee pain, and would need permanent work restrictions. Therefore, this action should be remanded to the Commissioner because the ALJ failed to evaluate and weigh Dr. Hoenig's opinions as required by *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527).

**Plaintiff's Remaining Arguments**

Because the Court finds the ALJ's failure to properly explain his weighing of the medical evidence is a sufficient basis to remand the case to the Commissioner, the Court declines to specifically address Plaintiff's additional allegations of error by the ALJ. However, upon remand, the Commissioner should take into consideration Plaintiff's remaining allegations of error.

## <u>CONCLUSION AND RECOMMENDATION</u>

Based upon the foregoing, it is recommended that the decision of the Commissioner be REVERSED and REMANDED for administrative action consistent with this recommendation, pursuant to sentence four of 42 U.S.C. § 405(g).

IT IS SO RECOMMENDED.


November 13, 2015                    s/Jacquelyn D. Austin
Greenville, South Carolina           United States Magistrate Judge


31